IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LISA S. SAVAGE, | ) |
|     Plaintiff, | ) ) ) ) |
| v. | ) Civil Case No. 7:19cv444 |
| COMMONWEALTH ASSISTED LIVING, LLC, **Serve: Corporation Service Company**     100 Shockoe Slip Fl 2     Richmond, VA 23219     (Richmond City) | ) ) ) ) ) ) ) |
| and | ) ) |
| MCAP HILLSVILLE, LLC **Serve: Corporation Service Company**     100 Shockoe Slip Fl 2     Richmond, VA 23219     (Richmond City) | ) ) ) ) ) ) |
|     Defendants. | ) ) |

## COMPLAINT

Plaintiff Lisa S. Savage files this complaint against defendants Commonwealth Assisted Living, LLC and MCAP Hillsville, LLC, (hereinafter individually and collectively, "defendants" or "Commonwealth"), and as grounds therefore states as follows:

### INTRODUCTION

Lisa Savage has multiple sclerosis (MS). Despite her condition, she worked with elderly residents, some of whom also suffered from MS and other disabilities, as the Activities Director at an assisted living facility in Hillsville, Virginia. In 2009 Commonwealth terminated her employment due to her MS, then rehired her in 2010 and promoted her to Activities Director, then in 2018 new management again told her that she could not do her job due to MS and

1

terminated her employment a second time. Ms. Savage loves working with elderly people and wants her job back. With nowhere else to turn, she turns to the federal courts for relief.

**STATEMENT OF THE CASE, JURISDICTION AND VENUE**

(1) This is an action for declaratory, injunctive relief and monetary damages, and to remedy violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, as amended.

(2) The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1343 and 29 U.S.C. § 2617. The Court also has jurisdiction over the ADA claim pursuant to ADA Section 107, 42 U.S.C. § 12117, which incorporates by reference Section 706 of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5, *et seq.*

(3) Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) with respect to the ADA claim (Ex. 1, incorporated by reference herein), exhausted all administrative procedures, received a notice of right to sue dated March 19, 2019 (Ex. 2), and files this complaint within ninety (90) days of receipt thereof.

(4) Venue properly lies in the Roanoke division of the western district of Virginia in that all of the discriminatory acts alleged herein occurred in the western district of Virginia.

**PARTIES**

(5) Plaintiff at all times material hereto was and is a resident of the Commonwealth of Virginia. At all times material hereto, plaintiff was an "employee" of defendants Commonwealth Assisted Living, LLC or MCAP Hillsville, LLC, or both of them (plaintiff is not certain of the precise legal name of her employer; discovery required).

2

(6)     Commonwealth is a "person" within the meaning of ADA Section 101(7), 42 U.S.C. § 12111(7) and Title VII, Section 701, 42 U.S.C. § 2000e.  At all times material hereto, Commonwealth employed 300 or more employees and is an "employer" within the meaning of ADA Section 101(5)(A), 42 U.S.C. § 12111(5)(A), and is and was at all times material hereto engaged in an industry affecting commerce within the meaning of ADA Section 101(7), U.S.C. § 12111(7), and Title VII, Section 701, 42 U.S.C. § 2000e(b).

## STATEMENT OF FACTS

(7)     Commonwealth is a corporation or other business entity doing business in the western district of the Commonwealth of Virginia and elsewhere.

(8)     On information and belief, Commonwealth owns and operates twenty-one (21) senior assisted living facilities in the state of Virginia, including the facility where plaintiff worked known as Commonwealth Senior Living (also sometimes known as Wheatland) in Hillsville, Virginia.  According to the company's website, www.commonwealthsl.com (visited June 12, 2019), since its founding in 2002, Commonwealth has grown to become one of the largest providers of independent living, assisted living, and memory care services in the state of Virginia with a combined capacity of over 1500 residents.  All of Commonwealth's facilities, including the one in Hillsville, Virginia, offer specialized care for people suffering from Alzheimer's and dementia.

(9)     Plaintiff began working for Commonwealth/Wheatland at its facility in Hillsville, Virginia as a receptionist/office assistant in the fall of 2008 (all dates and times are approximate).

(10)    In December 2008, plaintiff was diagnosed with multiple sclerosis, commonly known as MS.

(11) Commonwealth knew that plaintiff suffered from MS; and in January 2009, Commonwealth told plaintiff that she could not perform her job due to her illness and that she had not been employed long enough to qualify for FMLA and terminated her employment. The director of the facility, Karen Worrell, told plaintiff that if any job openings came up that she could do, Worrell would contact plaintiff.

(12) In 2010, Worrell contacted plaintiff and asked her to apply for Assistant Activities Director, an open position. Plaintiff applied for the job and was hired on June 1, 2010.

(13) Plaintiff performed the job well and was eventually promoted to Activities Director. The Activities Director position required Plaintiff to earn the assisted living caregiver credentials which she studied for and acquired. Plaintiff also obtained many other certifications by attending various classes and courses as required by her employer. Plaintiff's evaluations were always high, and she met her performance goals.

(14) Then in 2015, Commonwealth hired a new director, Kayla Crowder, to work at the Hillsville facility. Kayla is young, approximately 30 years old, and does not suffer from MS.

(15) Plaintiff is substantially older than Kayla. She was born in 1967 and is 52 years old.

(16) In 2016 plaintiff's employer hired a young lady, Raven Lineberry (about 21 years old), to work as plaintiff's assistant.

(17) Soon afterward, Kayla's attitude toward plaintiff changed which affected her work schedule. Plaintiff sometimes worked 11 days in a row and every other weekend for over a year.

(18) On April 15, 2016, plaintiff was told that she could no longer drive the facility van and was not allowed to drive her own car during business hours to do any work related to

4

Commonwealth. When she asked for an explanation, Commonwealth stated that the change was because plaintiff was on an experimental drug for MS. Plaintiff explained that she was on an FDA approved drug, although she had previously been in a drug study for an experimental drug. Plaintiff provided a statement from her neurologist confirming her ability to drive the van and a copy of her driving record with a 5+ score.

(19) Nevertheless, Commonwealth would not permit plaintiff to resume driving the van until she spoke to her regional director about being removed from that duty. Within a few days of doing so, Plaintiff was told to start doing all transports again (the van is used to transport residents to various activities and places).

(20) On March 3, 2017, Plaintiff was called into Kayla Crowder's office and told that her job title would be changed to Activities Coordinator, and that Raven Lineberry would become the full-time Activities Director. Plaintiff was also told that the job responsibilities would be shared 50/50 and that plaintiff and Raven we would be equals, both reporting to Kayla. While plaintiff would be responsible for all transportation, Raven would be required to work only one weekend per month; Raven would also be doing all of the computer work as she was more proficient with the computer than plaintiff, and Raven would take over plaintiff's office. On March 11, 2017, plaintiff had to vacate her office so Raven could begin work on March 13, 2017.

(21) Stress exacerbates symptoms of MS, and plaintiff suffered significant stress as a result of Commonwealth's actions.

(22) In December 2017, plaintiff was seen by her neurologist, Dr. Gordon Burch, because she was having some symptoms of relapse associated with MS. At that time plaintiff was given oral steroids and used a week of sick time from work. Dr. Burch began tapering

5

Case 7:19-cv-00444-EKD   Document 1   Filed 06/13/19   Page 5 of 11   Pageid#: 5

plaintiff off her medication as he determined that it was not doing enough for plaintiff's condition. Because Dr. Burch was scheduled to retire in March 2018, he referred plaintiff to Dr. Jill Cramer in Christiansburg and told plaintiff to discuss with Dr. Cramer her medication to see what she might recommend.

(23) In late March 2018, plaintiff was seen by Dr. Cramer as her symptoms of relapse were still present. Dr. Cramer prescribed a round of IV steroids and a week out of work. Plaintiff took the doctor's note for time out of work to Commonwealth and asked for FMLA paperwork. That period of time was extended to a total of three weeks out of work. Plaintiff first returned to work for six hours per day, then returned to her full schedule, which at the time was approximately 35 – 40 hours per week.

(24) But, plaintiff was not allowed to drive the van upon returning to work and was not allowed even to ride in the van. In addition, Kayla told plaintiff that she did not need to attend the outings for the residents, which heretofore had been an important part of plaintiff's job.

(25) On May 2, 2018, plaintiff submitted a family medical leave form requesting a brief absence from work to deal with her MS relapse (Ex. 3).

(26) Commonwealth's response was swift and sure. On May 31, 2018, Kayla Crowder ordered plaintiff to go to Lucas Therapies in Roanoke the next day, June 1, 2018, at 12:45 p.m. for a functional capacity evaluation. When plaintiff told Ms. Crowder that June 1st was her scheduled day off, Ms. Crowder said that "they really want you to have this done," or words to that effect.

(27) Plaintiff then contacted her personal physician to ask her thoughts. Dr. Cramer told her to go ahead, and that she was confident that plaintiff would pass the exam. The next day plaintiff went to the appointment and was examined by Bays Gibson of Lucas Therapies and

his assistant at that time. Gibson told plaintiff that he saw no reason why she could not perform her job duties.

(28) Plaintiff returned to work on June 2, 2018 and resumed her normal job duties with the exception of the van transports.

(29) About that time, the memory care coordinator took off for maternity leave, and plaintiff was told that she would take on her duties with activities during the week. Plaintiff was also expected to do both the memory care and the senior living activities on the weekends.

(30) On June 11, 2018, plaintiff began her new MS IV medication. As a result, she was out of work on June 11 and 12, 2018. She returned to work on June 13, 2018.

(31) The next day, June 14, 2018, Kayla Crowder called plaintiff to her office. Kayla handed plaintiff a letter and told plaintiff that her employment was terminated. Plaintiff believes that Kayla had Corporate Human Resources Officer Tommy Comer on the speaker phone at the time. When Kayla asked whether plaintiff understood what was happening, she asked, "you're letting me go?" Kayla responded, "yes."

(32) When plaintiff told Kayla (and Mr. Comer) that she had just started a new medication and asked whether they could at least wait until the medication had time to start working, plaintiff was told "no" and that "her job would be filled immediately," or words to that effect.

(33) Plaintiff was never offered or explained any rights under the FMLA to take time off due to her MS and to protect her job. Mr. Comer asked if plaintiff needed help applying for short-term disability; plaintiff was in shock and said yes. Then Kayla said we need to go clean out plaintiff's desk and escorted plaintiff to her office. Crowder requested plaintiff's work IPad,

7

then had plaintiff pack up her personal belongings and escorted plaintiff out the back door—not the front door—of the building.

(34) Within 24 hours, plaintiff's company email was cut off but her payroll portal remained open. The next week, Kayla instructed plaintiff to go into her payroll portal and request the week of June 18 through 22 as a vacation week and that she would approve it, which plaintiff did and was paid for that week. All of this was against plaintiff's will, as she wanted to keep working.

(35) Then things started getting even stranger. Within a few hours of being terminated, plaintiff received a telephone call from a woman from a Collinsville, Virginia number (276.352.4460). She did not identify herself but stated that she had heard that plaintiff needed help signing up for disability. When plaintiff told the woman that she had just been let go from her job that morning, the woman hung up the phone.

(36) Then on June 21, 2018, plaintiff received a call from another number in Collinsville, Virginia (276.352.4073). The woman said her name so quickly that plaintiff did not catch it but stated that she was willing to help plaintiff with her SSI short-term disability and needed to ask plaintiff a few questions so the process would go more quickly. The questions were very odd. Some of them are as follows:

| | |
|---|---|
| Question: | Are you out of work now. |
| Response: | I was let go last Thursday. |
| Question: | Are you not able to do your job. |
| Response: | I was doing my job when I was let go. |
| Question: | You will be out of work at least a year. |
| Question: | I have no plans of being out of work for a year. |
| Question: | Where is your chronic pain? |
| Response: | I have no chronic pain. |
| Question: | You have chronic pain all over. |
| Response: | I have no pain. |

Then the caller hung up the phone.

8

Case 7:19-cv-00444-EKD   Document 1   Filed 06/13/19   Page 8 of 11   Pageid#: 8

(37) Within 30 minutes or so of that call, plaintiff received a text from Kayla Crowder requesting a meeting with plaintiff the next day to go over the next steps (to get disability).

(38) On July 6, 2018, plaintiff received a letter from Kayla dated July 2, 2018 along with a copy of a severance agreement stating that the company wanted to pay plaintiff $6,500 to release Commonwealth from any claim for wrongdoing. Plaintiff did not sign the agreement because she wants to work and she wants her job back.

(39) Multiple sclerosis is an auto immune disease and disability that affects the central nervous system and causes symptoms including muscle spasms, vision problems, and difficulty walking. The disease has occasionally required plaintiff to miss work during flare-ups and medication changes, but plaintiff will not let MS define her. Plaintiff wants to work and particularly loves working with the elderly. Presently, plaintiff continues to work by providing private-duty care to an elderly woman who is bed ridden.

## **COUNT I: VIOLATION OF FAMILY AND MEDICAL LEAVE ACT**

(40) Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(41) At all times material hereto, defendants employed more than 50 persons and was aware of its obligations under the Family and Medical Leave Act, 29 U.S.C. §§2601, *et seq*.

(42) Among other things, the FMLA requires employers to provide up to 12 weeks of unpaid leave to employees who are out on sick leave due to a serious health condition that makes the employee unable to perform the essential functions of her job. 29 U.S.C. § 2612(a)(1). Further, FMLA provides that it is unlawful for an employer to interfere with, retaliate against, restrain, or deny the exercise of or the attempt to exercise, any rights provided under the FMLA. 29 U.S.C. § 2615. FMLA further provides that the taking of leave shall not result in loss of any

9

Case 7:19-cv-00444-EKD   Document 1   Filed 06/13/19   Page 9 of 11   Pageid#: 9

employment benefit accrued prior to the date on which the leave commenced. 29 U.S.C. § 2614(a)(2).

(43) Defendants terminated the employment of plaintiff and otherwise deprived plaintiff of employment benefits in violation of FMLA.

(44) As a direct result, plaintiff has suffered and will continue to suffer the loss of employment and economic loss, as well as pain and suffering, humiliation, embarrassment and other non-pecuniary loss.

(45) Defendants also acted with malice or with reckless indifference of plaintiff's federally protected rights so as to support an award of exemplary damages.

## COUNT II: VIOLATION OF AMERICANS WITH DISABILITIES ACT

(46) Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(47) At all times material hereto, plaintiff was an individual with a "disability" within the meaning of the ADA in that she had a physical impairment that limited one or more of her major life activities, had a record of such impairment, or was perceived and regarded by defendant as having such impairment.

(48) Plaintiff was a "qualified individual with a disability" as that term is defined by the ADA. At all times material hereto, plaintiff was an individual with a disability who, with or without a reasonable accommodation, could perform the essential functions of her job.

(49) Defendants' treatment of plaintiff constitutes discrimination against plaintiff with respect to the terms, conditions, and privileges of employment in violation of the ADA, as amended.

(50)   Defendants also acted with malice or with reckless indifference of plaintiff's federally protected rights so as to support an award of exemplary damages.

(51)   As a direct and proximate result of defendant's discriminatory acts, plaintiff has suffered and will continue to suffer lost wages and benefits, mental anguish, loss of enjoyment of life, pain and suffering, and other non-pecuniary loss.

WHEREFORE, plaintiff Lisa S. Savage demands judgment against defendants Commonwealth Assisted Living, LLC and MCAP Hillsville, LLC, and each of them, jointly and severally, for equitable and injunctive relief and compensatory and punitive damages, including but not limited to immediate reinstatement of her employment and front and back pay with prejudgment interest, and attorney's fees and costs.

Plaintiff demands trial by jury on all issues that may be tried before a jury, including arbitrability of any claim.

Respectfully submitted,

LISA S. SAVAGE

By   /s/ Terry N. Grimes
         Of Counsel

Terry N. Grimes, Esquire (VSB No. 24127)
TERRY N. GRIMES, ESQ., P.C.
Franklin Commons
320 Elm Avenue, SW
Roanoke, Virginia 24016
(540) 982-3711
(540) 345-6572 *Facsimile*
Email: *tgrimes@terryngrimes.com*
      *Counsel for Plaintiff*